# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**JERRY A. ROTENBERRY, JR,**
**Claimant Below, Petitioner**

**FILED**

January 25, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 17-0673** (BOR Appeal No. 2051812)
(Claim No. 2014007771)

**WELCH EMERGENCY HOSPITAL,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jerry A. Rotenberrry Jr., by Jerome McFadden, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Welch Emergency Hospital, by Lisa Warner Hunter, its attorney, filed a timely response.

The issue on appeal is the award of permanent partial disability benefits. On August 10, 2015, the claims administrator awarded 7% permanent partial disability. The Office of Judges reversed the claims administrator in its February 2, 2017, Order and granted 12% permanent partial disability. The Order was reversed and vacated by the Board of Review on July 3, 2017, and the 7% permanent partial disability award granted by the claims administrator was reinstated. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Jerry Rotenberry worked for Welch Community Hospital as a construction worker and plumber for thirty-one years. On May 26, 2013, he alleged he sustained occupational injuries to his wrists, fingers, hands, and arms due to installing commercial water heaters and plumbing copper pipe and valve frames while using pipe wrenches, crescent wrenches, drills, and other tools. On July 10, 2013, Robert Kropac, M.D., diagnosed bilateral carpal tunnel syndrome with a ten-year history of carpal tunnel syndrome. The claims administrator held the claim compensable for bilateral carpal tunnel syndrome on November 26, 2013.

1

Mr. Rotenberry underwent bilateral carpal tunnel releases in the summer of 2014 and had successfully returned to work by that September. He continued to work until January of 2015 when he retired. Prasadarao Mukkamala, M.D., performed an independent medical evaluation of Mr. Rotenberry on August 3, 2015, and prepared his written report the next day. Mr. Rotenberry told Dr. Mukkamala that he had occasional numbness in his hands and that they felt weak and tired. Dr. Mukkamala noted Mr. Rotenberry's history of diabetes and obesity, as well as his long standing diagnosis of bilateral carpal tunnel syndrome. Dr. Mukkamala diagnosed status post-surgical release of bilateral carpal tunnel syndrome with a good result. He assessed 3.5% whole person impairment for each hand for a total of 7% whole person impairment.

The claims administrator granted Mr. Rotenberry an award of 7% permanent partial disability on August 10, 2015. Bruce Guberman, M.D., performed an independent medical evaluation on March 1, 2016. He noted Mr. Rotenberry first experienced numbness, tingling, and pain in his hands thirteen to fifteen years ago, when he was diagnosed with bilateral carpal tunnel syndrome. According to Mr. Rotenberry, the carpal tunnel releases only partially improved his symptoms as he continued to experience bilateral numbness and tingling. Dr. Guberman diagnosed bilateral carpal tunnel syndrome, status post carpal tunnel release. He assessed 9% whole person impairment for the left wrist and 6% whole person impairment for the right wrist for a total of 14% whole person impairment.

Dr. Mukkamala prepared a supplemental report on September 28, 2016, after reviewing the report of Dr. Guberman. Dr. Mukkamala disagreed with Dr. Guberman's assessment because Mr. Rotenberry was fifty-five years of age, significantly obese, and had a history of diabetes. Mr. Rotenberry was six feet, one and a half inches tall and weighed 332 pounds. Dr. Mukkamala opined that obesity and diabetes both contribute to carpal tunnel syndrome and, therefore, there were external factors present in relation to the causation of Mr. Rotenberry's carpal tunnel syndrome. Dr. Mukkamala noted that Mr. Rotenberry returned to work six weeks after the August 2014, surgery for his right hand and worked for four and a half months before deciding to retire. Dr. Guberman's evaluation of Mr. Rotenberry took place more than a year after he retired. In Dr. Mukkamala's opinion, Dr. Guberman erred when he attributed the symptoms described by Mr. Rotenberry to the bilateral carpal tunnel syndrome, considering his diabetes and obesity. The 14% impairment rating assessed by Dr. Guberman was based on exaggerated symptoms. Additionally, the symptoms should be attributed to many factors, not just the claim. Dr. Mukkamala opined that his own assessment of 7% impairment was quite liberal, as he did not apportion any of the impairment to obesity and diabetes.

On October 10, 2016, Marsha Bailey, M.D., performed an independent medical evaluation. Mr. Rotenberry told her he had constant numbness and pain in his wrists. She noted he stopped working in January of 2015 due to chronic lower back pain from a March 2014 injury. He had a fifteen-year history of bilateral carpal tunnel symptoms, as well as a history of diabetes, hypertension, and obesity. Dr. Bailey assessed 7% impairment for bilateral carpal tunnel syndrome and apportioned 6% to Mr. Rotenberry's uncontrolled diabetes and morbid obesity. She also opined Dr. Guberman's failure to apply West Virginia Code of State Rules § 85-20 (2006) rendered his report invalid.

On February 2, 2017, the Office of Judges reversed the claims administrator's award of 7% permanent partial disability and granted a 12% permanent partial disability award. It determined that the evidence showed that no apportionment between occupational and non-occupational impairment should be made based on Mr. Rotenberry's thirty-one-year employment and his job duties. Moreover, the claim had been held compensable for carpal tunnel syndrome. The Office of Judges then found the impairment assessed by Dr. Guberman to be the most persuasive. It reduced the 9% impairment for the left wrist to 6% based on West Virginia Code of State Rules § 85-20. The Office of Judges then determined that Mr. Rotenberry was entitled to 12% whole person impairment for the bilateral carpal tunnel syndrome.

In its July 3, 2017, decision, the Board of Review reversed and vacated the Office of Judges' Order and reinstated the 7% permanent partial disability award. It found that the Office of Judges' award of 12% permanent partial disability was not recommended by any of the physicians. It also determined "the Commissioner is to make permanent partial disability awards solely on the basis of the doctor's impairment evaluation." *Repass v. Workers' Comp. Div.*, 212 W. Va. 86, 569 S.E.2d 162 (2002). Additionally, in *Magnatech Industrial Services v. York*, No. 14-0386, 2015 WL 249263 (W.Va. Jan. 15, 2015)(memorandum decision), this Court reversed an order that similarly reduced an impairment rating to comply with West Virginia Code of State Rules § 85-20. The Board of Review found Dr. Mukkamala's assessment of 7% impairment to be the most credible and reliable. Therefore, it determined the claim administrator's award of 7% permanent partial disability should have been affirmed.

After review, we agree with the Board of Review. West Virginia Code of State Rules § 85-20-64.5 provides that "an injured worker who can otherwise show entitlement to a permanent partial disability award for carpal tunnel syndrome shall be eligible to receive a permanent partial disability award of 0%-6% in each affected hand." Dr. Guberman assessed 9% impairment for the right hand. However, he failed to reduce the impairment to comply with the West Virginia Code of State Rules. Dr. Guberman's failure to reduce the impairment he assessed to comply with the West Virginia Code of State Rules may not be remedied by the Office of Judges. Because Dr. Guberman's assessment of impairment did not comply with West Virginia Code of State Rules § 85-20, it was not reliable. Therefore, the Office of Judges erred when it relied on Dr. Guberman's opinion to award permanent partial disability benefits.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: January 25, 2018**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING**:
Justice Robin J. Davis

4